NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| A.D.M. CLUB MANAGEMENT SYSTEMS, INC., CLUB SOLUTIONS, LLC, JONAS MID-ATLANTIC, INC., CLUBSOFT, INC., Plaintiffs, | Hon. Harold A. Ackerman |
| v. | Civil Action No. 05-3943 (HAA) |
| GARY JONAS COMPUTING, LTD., CSI USA DISTRIBUTION, INC., Defendants. | **OPINION AND ORDER** |

Richard Marcickiewicz, Esq.
SEARS, SWEENEY & MARCICKIEWICZ
89 Diamond Spring Road
Denville, NJ 07834
*Attorneys for Plaintiffs*

Robert A. Assuncao
DLA PIPER RUDNICK GRAY CARY US LLP
P.O. Box 2940
379 Thornall Street, 8th Floor
Edison, NJ 08837-2226
*Attorneys for Defendants*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion to dismiss on behalf of Defendants Gary Jonas Computing, Ltd. and CSI USA Distribution, Inc. ("Jonas"). For the following reasons, Defendants' motion is GRANTED.

***Background***

Defendant Gary Jonas Computing, Ltd. is a Canadian corporation with its principal place of business in Jenkintown, Pennsylvania. Defendant CSI USA Distribution, Inc. ("CSI") is a Delaware corporation with its principal place of business in Canada. CSI is a corporate affiliate of Gary Jonas Computing, Ltd. Hereinafter Defendants are collectively and interchangeably referred to as "Jonas." The Plaintiffs are four companies: A.D.M. Club Management Systems, Inc. ("ADM"); Club Solutions, LLC. ("Club Solutions"); Jonas Mid-Atlantic, Inc. ("Mid-Atlantic"); and Clubsoft, Inc. ("Clubsoft").

Jonas is engaged in the business of developing and selling specialized computer software that is utilized in various membership clubs, e.g., country clubs, tennis clubs and yacht clubs, throughout North America. Jonas marketed, sold and distributed its software to private clubs through independent sales representatives referred to as JSTARs (Jonas Sales Team Authorized Representatives). Each of the four Plaintiffs was, at all relevant times, a JSTAR, which integrated, distributed and developed technology solutions to private clubs in an assigned, exclusive territory. The Plaintiff companies are each organized under a different state's laws, i.e., New Jersey (ADM), South Carolina (Club Solutions), North Carolina (Mid-Atlantic), and Kansas (Clubsoft).

Each JSTAR served two primary functions. First, each acted as a distributor of Jonas Software by purchasing the software, at a discounted price, directly from Jonas. Each JSTAR then resold the software at a retail price to individual private clubs. Second, each JSTAR sold, on behalf of Jonas, certain "Support and Enhancement" packages to the same private clubs. These packages provided the private clubs with ongoing support of the Jonas software they purchased. The packages also provided updates to the software such that the private clubs would

not have to purchase a whole new version of the Jonas software. In return for selling the Support and Enhancement packages, each JSTAR was to receive sales commissions.

In early January 2005, Jonas sought to make certain amendments to each JSTAR's respective agreement with Jonas. Allegedly, the amendments sought to eliminate the commissions previously earned for selling Support and Enhancement packages and to make future commissions valid for two years following such sales. When three of the four Plaintiffs notified Jonas of their disagreement with the amendments, Jonas terminated them as authorized sales representatives. One of the Plaintiffs, A.D.M, signed and returned the letter of amendments, but included some of its own proposed changes. When Jonas failed to return a countersigned copy, ADM sent another letter attempting to withdraw the letter it had sent with the proposed changes. Shortly thereafter, Jonas sent a countersigned copy of A.D.M's letter with proposed changes, despite having already received ADM's withdrawal letter.

Finally, between December 2003 and October 2005, Jonas acquired three of its competitors, which also developed and sold specialized software to private clubs. As a result of these acquisitions, Jonas allegedly controls approximately two-thirds (2/3) of the private club software market in North America.

Count 1 of Plaintiffs' 13-count Complaint alleges that Jonas violated the Sherman Antitrust Act, 15 U.S.C. § 2, by monopolizing or attempting to monopolize the private club software market. Count 2 seeks a Declaratory Judgment that each Plaintiff be paid commissions for the Support and Enhancement packages each of them sold. Count 3 seeks a Declaratory Judgment in ADM's favor that the amendments never became part of its agreement with Jonas. Counts 4-7 allege breach of contract on behalf of each of the four Plaintiffs. Similarly, counts 8-

11 allege wrongful termination and breach of the agreement's implied covenant of good faith and fair dealing on behalf of each of the four Plaintiffs. Count 12 seeks statutory damages under North Carolina law on behalf of Club Solutions (the South Carolina company) and Count 13 seeks statutory damages under Illinois law on behalf of Mid-Atlantic (the North Carolina company).

Defendants bring this motion to dismiss Counts 1, 12, and 13 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In addition, Defendants move to dismiss the other counts, 2-11, under Rule 12(b)(2) for lack of personal jurisdiction. Defendants also move to dismiss Counts 2-11 based upon Rule 12(b)(3) for improper venue. Finally, Defendants assert that Counts 2-11 should also be dismissed based upon a forum selection clause in the respective agreements between Jonas and each Plaintiff and for *forum non conveniens*.

## ***Analysis***

### ***A. Antitrust Claim***

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court is required to accept as true the facts and allegations contained in the complaint and all reasonable inferences drawn therefrom, and to view the facts in the light most favorable to the non-moving party. *Sadruddin v. City of Newark*, 34 F. Supp. 2d 923, 925 (D.N.J. 1999); *see also Gen. Motors Corp. v. New A Chevrolet, Inc.*, 263 F.3d 296, 325 (3d Cir. 2001). While the Court will accept as true all reasonable inferences and well-pleaded allegations, it will not accept "unsupported conclusions and unwarranted inferences" or legal

conclusions cast in the form of factual allegations. *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2002). In the complaint, the claimant must set forth sufficient information to provide defendant with notice of the plaintiff's claims, such as the elements of the claims. *Id*; *see also* Fed. R. Civ. P. 8(a)(2). A "complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff['s] cause of action." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The Supreme Court has explained:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47-48 (1957). "The court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In seeking to dismiss Plaintiffs' antitrust claim under Rule 12(b)(6), Jonas focuses on whether the Plaintiffs have antitrust standing. Assessing whether a party has antitrust standing involves the question of whether the alleged injury "is of the type that the antitrust statute was intended to forestall." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983). As the Third Circuit has articulated, "[i]f the injury is not of the requisite type, even though the would-be plaintiff may have suffered an injury as a result of conduct that violated the antitrust laws, he or she has no standing to bring a private action under the antitrust laws to recover for it." *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir. 1997). In *Barton & Pittinos*, the Third Circuit amalgamated the Supreme

Court's analysis in *Associated General Contractors* into a formulation of factors that are relevant for this Court to consider in this antitrust standing challenge:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*Barton & Pittinos*, 118 F.3d at 181.

The crux of Jonas's argument against Plaintiffs' antitrust standing focuses on the second and fourth factor. The second factor asks whether the plaintiff has an antitrust injury. "'A plaintiff who is neither a competitor nor a consumer in the relevant market does not suffer antitrust injury.'" *Schuylkill Energy Res., Inc. v. Penn. Power & Light Co.*, 113 F.3d 405, 415 (3d Cir. 1997) (quoting *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir. 1996)). "[A] commercial intermediary, such as a distributor or sales representative, generally lacks standing because its antitrust injury is too remote." *The Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 11 (1st Cir. 1999); *see also Gregory Mktg. Corp. v. Wakefern Food Corp.*, 787 F.2d 92, 96 (3d Cir. 1986). "[M]arket definition is not determined by formal labels, but rather takes into account 'the realities of competition.'" *Barton & Pittinos*, 118 F.3d at 183 (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 826 (3d Cir. 1984)).

Plaintiffs, in their Amended Complaint, declare that they each served as one of Jonas's "'Authorized Representatives' in an exclusive assigned territory, in which each of them marketed

Jonas Software, as well as Support and Enhancement packages." (Am. Compl. ¶ 10.) Moreover, "[i]n that capacity, each Plaintiff . . . acted as a distributor of Jonas Software, who bought Jonas Software directly from Gary Jonas at a discounted price, and who then resold the same to Private Club customers at a retail price . . . and each acted as a sales representative in the sale of Support and Enhancement packages." (*Id.*)

Plaintiffs declare in their brief that they are consumers and/or competitors in the marketplace alongside Jonas and therefore that they have proper standing. Plaintiffs point to the allegation in their complaint, that they bought software directly from Jonas and resold it, as sufficient proof that they were consumers. (Pls.' Br. at 13.) Similarly, Plaintiffs argue that because Jonas allegedly violated the respective exclusive agreements by selling directly to the private clubs, such violation makes Plaintiffs competitors of Jonas. (*Id.*)

In *Gregory Marketing*, the Third Circuit upheld this Court's grant of a motion to dismiss under similar circumstances. *See Gregory Mktg.*, 787 F.2d at 92. In *Gregory Marketing*, the Third Circuit agreed with this Court that the broker in that case was not a proper party to bring suit under the antitrust laws. *Id*. The plaintiff in *Gregory Marketing* sold products to commercial distributors and retailers on behalf of an apple juice manufacturer. The plaintiff received compensation in the form of a percentage of gross sales of the manufacturer's products. *Id*. When the plaintiff discovered that the manufacturer was offering special discounts to one bulk purchaser, but not others, the plaintiff complained to the manufacturer that he thought the discounts were unlawful. *Id*. at 93. After further dispute over this alleged unlawful activity, the manufacturer terminated its brokerage agreement with the plaintiff. *Id*. The plaintiff thereafter brought suit against the manufacturer for violating the Robinson-Patman Act, 15 U.S.C. § 13(a).

*Id*. The plaintiff filed its complaint pursuant to 15 U.S.C. § 15 (1985), the same section giving Plaintiffs in the instant suit a private right of action in antitrust violation lawsuits.

The court of appeals, in *Gregory Marketing*, found that although the manufacturer's actions appeared to be anticompetitive, the plaintiff's "injury did not result from the anticompetitive nature of these practices." *Id*. at 95. The court did find that certain factors supported allowing the plaintiff to maintain the suit, such as a causal connection between the alleged antitrust violation and the harm to the broker. *Id*. But the court concluded that such causation or improper motive was not sufficient to withstand a motion to dismiss. *Id*.

Instead, the court focused on the injury suffered by the plaintiff and asked whether it was of the kind intended to be forestalled by the antitrust statutes. Focusing on the violation alleged by the plaintiff, the court found that it grew out of the pricing agreement between the retailer and the manufacturer, not the plaintiff-broker. *Id*. The court also found that the plaintiff was "neither a consumer nor a competitor in the apple juice market." *Id*. As such, the plaintiff was not "'within that area of the economy . . . endangered by [the] breakdown of competitive conditions.'" *Id*. (quoting *Blue Shield of Va. v. McCready*, 457 U.S. 465, 481 (1982)).

Analogously, the Plaintiffs in the instant litigation are similarly situated to the plaintiff-broker in *Gregory Marketing* in that Plaintiffs here were simply the intermediary through which Jonas distributed its product. The only facts Plaintiffs allege that are relevant to antitrust standing are that they purchased Jonas's software, thereby making them consumers, and that Jonas tried to sell directly to the private clubs, thereby making the Plaintiffs competitors of Jonas. Even at the motion to dismiss stage of litigation, this is insufficient.

As the *Gregory Marketing* Court noted, the plaintiff-broker's injury was wholly inflicted by the manufacturer's termination of its contract. *Id*. at 96. Similarly, Plaintiffs here appear to have suffered an injury wholly dependent upon Jonas's alleged violation of their respective exclusive distributorship agreements. If Plaintiffs' allegations are accurate, and this Court must take them as such on this motion to dismiss, then Plaintiffs have standing with respect to breach of contract and the like, but those claims do not also give rise to standing to assert anticompetitive injury under the antitrust laws. *See The Serpa Corp.*, 199 F.3d at 12 (affirming the district court's Rule 12(b)(6) dismissal based upon a finding that plaintiff-distributor's "injuries flow[ed] from the termination of its distributorship, and not from any anticompetitive effects of defendants'" actions); *see also Precision Surgical, Inc. v. Tyco Int'l, Ltd.*, 111 F. Supp 2d 586, 590 (E.D. Pa. 2000) (granting motion to dismiss based on a finding that plaintiff-distributor's injuries resulted from defendant-manufacturer's termination of distribution contracts).

In *Schuylkill Energy*, the Third Circuit addressed an antitrust suit in which the *supplier* of electric energy asserted an antitrust violation against the *purchaser* it supplied, which in turn sold electricity to end users. *Schuylkill Energy Res.*, 113 F.3d at 415. The plaintiff-supplier in that action argued that it was the purchaser's competitor for antitrust standing purposes. *Id*. The Third Circuit ultimately concluded, affirming the district court's Rule 12(b)(6) dismissal, that "[a] supplier of a product does not become a competitor of the purchaser merely because the purchaser in turn sells the product to the ultimate user." *Id*. By the same token, Jonas does not automatically become the competitor of Plaintiffs simply because it sells its software directly to the private clubs. Again, Plaintiffs may have a cause of action against Jonas for this direct

selling, but that action does not lie in antitrust.

Moreover, based upon the fourth *Barton & Pittinos* factor, directness of injury, this Court finds that there are more direct victims of any alleged antitrust violation by Jonas. That is, the private club market is more directly affected by Jonas's acquisition of its competitors, allegedly yielding a two-thirds control of the market. In the alternative, Jonas's direct competitors, i.e., software providers to the other one-third of the market that Jonas does not control, are more directly affected by any market consolidation. In sum, the private clubs and the other software manufacturers are far more directly affected by any alleged antitrust violation by Jonas than the Plaintiffs-distributors in this action. Because the Plaintiffs have not suffered an antitrust injury, as defined in this Circuit and others, and because there are more direct victims of any alleged antitrust violation by Jonas, Plaintiffs lack antitrust standing. As a result, this Court finds that Count 1 of Plaintiffs' Amended Complaint should be dismissed with prejudice.

***B. Forum Selection Clause***

Regarding the counts in Plaintiffs' Amended Complaint pertaining to the respective contracts each Plaintiff had with Jonas, Jonas moves to dismiss such counts under Rule 12(b)(3) for improper venue. Specifically, Jonas asserts that the forum selection clause in the contracts clearly states that Canada is the proper and exclusive venue in which such claims should be brought.

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877

(3d Cir. 1995). "Although the parties' agreement as to the most proper forum should not receive dispositive weight . . . it is entitled to substantial consideration." *Id.* at 880. "Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Id.* So long as the forum selection clause is not the result of fraud or some imbalance of bargaining power, "the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Id.* If a federal district court determines that a forum selection clause should be enforced, then, pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). "Transfer is not available, however, when a forum selection clause specifies a non-federal forum." *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001). If the forum selection clause specifies a non-federal forum, then the court should dismiss, pursuant to 28 U.S.C. § 1406(a), because transfer is impossible. *See Salovaara*, 246 F.3d at 298; *see also* 28 U.S.C. § 1406(a).

In the instant matter, Jonas moves to dismiss the remaining claims as to ADM, Clubsoft, and Mid-Atlantic, based upon a forum selection clause. Jonas admits in its brief that it has been unable to locate a written contract between Jonas and the fourth plaintiff, Club Solutions. Similarly, there is a dispute between the parties as to whether the contract put forth by Jonas as being signed by Plaintiff Mid-Atlantic actually is a contract between the Plaintiff in this case by that name. That is, Plaintiff Mid-Atlantic asserts that the company named in the contract put forth by Jonas has a similar name, but is not the same Mid-Atlantic to this dispute. Therefore, the Court's forum selection clause analysis only applies to the claims asserted by ADM and Clubsoft.

While submitted by Jonas as exhibits to its motion to dismiss, Plaintiffs do not deny the validity of the contracts as to ADM and Clubsoft. The forum selection clause in the ADM and Clubsoft contracts reads:

> This Agreement shall be construed and enforced in accordance with the laws of the Province of Ontario and of Canada an[d] any actions relating to the enforcement or interpretation of this Agreement shall be brought in the Courts of the Province of Ontario. The parties hereto attorn to the jurisdiction of the Court of the Province of Ontario.

(Assuncao Certif. Exs. A & C ¶ 12(b).) Plaintiffs' only response to Jonas's motion to dismiss based upon this forum selection clause is to assert that "[a]lthough ADM and Clubsoft each purportedly executed a form contract with Gary Jonas that contain forum selection clauses, Mid-Atlantic and Club Solutions did not." (Pls.' Br. at 28.) Plaintiffs then declare in a footnote that "[n]otably, Defendants cite no cases for the proposition that a forum selection clause must be enforced when the claims it allegedly encompasses are properly before the court under its supplemental jurisdiction." (*Id.*)

Unfortunately for Plaintiffs, it is also notable that they have failed to cite any cases that would support their position, which is, presumably, that the forum selection clauses, while valid as to ADM and Clubsoft, should not be enforced. Plaintiffs' reasoning on this point escapes this Court because Plaintiffs have failed to make any argument as to why the forum selection clauses should not be enforced. The only argument Plaintiffs marshal depends on the assumption that this Court will not dismiss their antitrust claim. That is, Plaintiffs appear to be arguing that because the antitrust claim is supposedly validly before this Court, then the other contractual claims based upon the same facts and circumstances are also properly before this court, despite

the forum selection clause. Plaintiffs do not, however, argue in the alternative with respect to what this Court should do if it dismisses the antitrust claim, which this Court must do here. As a result, the Court is left speculating as to why ADM and Clubsoft should not be bound by their valid forum selection clauses.

As the *Jumara* Court held, the Plaintiff bears the burden to demonstrate to the court why a forum selection clause should not be enforced. *Jumara*, 55 F.3d at 880. Plaintiffs here have not met that burden. On the contrary, it appears that the federal antitrust claim was intended to be the shoehorn that got this entire case heard in this country, so as to avoid the forum selection clause. Similarly, *Jumara* also recognizes a general deference to a plaintiff's choice of forum, but the Third Circuit tempered that deference where it is clear that a plaintiff has already made his choice of forum contractually. *Id*. This Court finds that the forum selection clauses are enforceable despite according the apparently valid forum selection clauses substantial consideration. As to ADM and Clubsoft, Counts 3, 6, 7, 8, and 11 should be dismissed, without prejudice, pursuant to 28 U.S.C. § 1406(a).

***C. Improper Venue***

The Court now considers the remaining claims of Club Solutions and Mid-Atlantic. In their Amended Complaint, Plaintiffs allege that venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a), (b) and (d). Section 1391(a)[1] declares that a civil action founded only on

---

[1] Section 1391(b) is similar to § 1391(a), but applies to cases founded not solely on diversity. Because this Court dismissed the federal question cause of action, this Court's subject matter jurisdiction over the remaining claims is founded solely on diversity of citizenship. As

diversity of citizenship may only be brought in a district (1) where any defendant resides or (2) in which a substantial part of the events giving rise to the claim occurred. There is no allegation that Defendants Jonas or CSI reside in New Jersey, as they are incorporated in Canada and Delaware, with a principal place of business in Pennsylvania and Canada, respectively. Moreover, because this Court must dismiss claims by the only New Jersey litigant, ADM, there is nothing in the Amended Complaint or Plaintiffs' brief to demonstrate that any part of the events giving rise to the remaining claims occurred in the District of New Jersey.

While Plaintiffs' Amended Complaint generally asserts that venue is proper here "because a substantial portion of the events giving rise to this Complaint occurred in this judicial district," (Am. Compl. ¶ 7), nowhere else in the thirty-two page Amended Complaint is New Jersey even mentioned, but for reference to ADM's place of incorporation, which is, of course, irrelevant to the current analysis. The only inference the Court could reasonably draw as to venue being properly laid in this judicial district is that one of the parties, ADM, is a New Jersey corporation. But because ADM's claims have been dismissed due to the forum selection clause, the remaining claims involve a South Carolina and North Carolina company suing companies that are only connected to Delaware, Pennsylvania and Canada. If this were not enough reason to dismiss for improper venue, two of the claims by the remaining plaintiffs involve interpretation of North Carolina and Illinois statutory law.

Finally, Plaintiffs, in their Amended Complaint, allege that venue is proper pursuant to § 1391(d), which simply states that "[a]n alien may be sued in any district." 28 U.S.C. § 1391(d).

---

such, the following analysis addresses only § 1391(a) venue.

It is not clear to the Court which, if either, of the Defendants is an alien. That is, both named Defendants are either incorporated in the United States or have their principal place of business in the United States. Either way, even assuming that at least one of the Defendants is an alien, "[w]hen an alien and a non-alien are joined as defendants, venue for the entire action is proper in any district where it is correct as to the non-alien defendant." *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 225 (D.N.J. 1966). As such, venue might be proper in the Eastern District of Pennsylvania, the District of Delaware, the District of South Carolina, a district in North Carolina, or possibly Ontario, Canada, but it clearly is not proper in the District of New Jersey. Therefore, this Court finds that the remaining Counts (2, 4, 5, 9, 10, 12, and 13) should likewise be dismissed, without prejudice, for improper venue, pursuant to 28 U.S.C. § 1406(a).

## ***Conclusion***

For the foregoing reasons, Defendants' motion to dismiss is hereby GRANTED. Count 1 is dismissed WITH prejudice as to all Plaintiffs and Counts 2-13 are dismissed WITHOUT prejudice as to all Plaintiffs. The Clerk shall mark this case CLOSED.

Newark, New Jersey
Dated: September 18, 2006

/s Harold A. Ackerman
U.S.D.J.